final case on the calendar, Evan Davis v. New York State Board of Elections, et al. Good morning, your honors. Lawrence Friedman from Cleary Gottlieb State and Hamilton on behalf of the appellant, Evan Davis. Your honors, there are at least three distinct respects in which Mr. Davis has made well-pleaded allegations that he is suffering current concrete injury that affords him standing to prosecute his claims in this case now. First, the candidate laws require him to alter his pro-convention advocacy in order to account for the provisions of the convention laws that he is challenging. Second, the provisions of the candidate laws make it less likely that a convention will be called. And third, by impeding Mr. Davis's being currently and concretely injured because the candidate laws are impeding his own candidacy for election as a convention delegate by imposing compelled speech and association on him. Now at the out— Why can't he simply say things as they are? I want to run unaffiliated. The isn't that the truth and a completely appealing kind of an argument? Because Judge Calabresi, the fact is that the mere existence, the mere existence of the candidate laws make it less likely that a convention will be approved because history shows that the conventions have been rejected in the past because voters do not have the confidence that the convention will not just be a replica of the legislature. And what Mr. Davis, Mr. Davis's pro-convention advocacy is premised on the point that voters need to be able to vote for— And then why can't he say, uh, this is why you need to vote for a convention so that we can establish that the convention can be that way. Why isn't that? I mean, uh, you know, I don't know. I'm not a New Yorker, but I would think that in Connecticut people would say, gee, that's a good argument. Well, Judge Calabresi, under your scenario, what happens if the voters approve the convention and the courts do not strike these provisions of the law and do not change the law so that voters will be able to identify independent, unaffiliated candidates as such? It's a catch-22. Then your client would lose anyway, because if that is constitutional, then of the merits, that is all right. So you're just asking us to try that now when it is awfully, awfully conjectural, I should think. But, Your Honor, I think that argument ignores the fact that the mere existence of the candidate laws makes it less likely that a convention will be called. But even if you gainsay that, the point is that under Your Honor's hypothetical, Mr. Davis is being forced to alter his pro- convention advocacy by making the statement that Your Honor just postulated. Does that mean that any rules with respect to a convention, or anything like that, that somebody does not like can get challenged at the beginning? Because what you're saying is that the fact that this makes it difficult for me, in this sense that you've given, would mean that whatever rule, if a rule is that a convention must be held in Albany rather than in New York City, and I think that people don't vote because they don't like the idea of it being in Albany, I can challenge that at the moment that I bring that? I mean, what kinds of rules do you say can be challenged and what kinds do you say not? Unconstitutional rules, Your Honor, and the difference here is that these rules are unconstitutional. They impose speech and association on candidates by forcing them to affiliate with a non-existent political body, and my goodness, in a scenario where if the elections will make one up for him and impose it on him. You mean we have to decide whether something is constitutional or not, to decide whether it is standing to challenge whoever it is? That kind of turns it around, doesn't it? But Your Honor, this is no different than any other circumstance in which someone challenges a provision on the basis of constitutionality saying that my ox is being gored, and here Mr. Davis' ox is being gored in at least two current immediate respects. Number one, as Your Honor has conceded, he needs to alter his advocacy in a way that he would not have to advocate in the absence of these provisions, and number two, there are well-pleaded allegations that demonstrate that a convention is less likely to be called under these conditions. In the case of Meyer v. Grant, where the plaintiffs challenged Colorado law that prohibited the payment of solicitors to get signatures for a petition for a ballot initiative, the Supreme Court did not require them to actually fail to get a sufficient number of signatures because the Supreme Court said in Meyer v. Grant, no, this prohibition on their being able to pay petition solicitors makes it less likely that they will succeed. So, of course, as a matter of First Amendment law, they are entitled to challenge that now. They don't have to wait until they fail. Same principle applies here. Mr. Davis should not be required to wait until the convention vote fails when he has a well-pleaded allegation that there is an And those provisions, if he's right, should not be there at all. If the statute were to provide that only men could serve as convention delegates, I have no doubt that the court would say that they're standing now because that makes it less likely that people will vote for a convention, or if there were racial or ethnic criteria. Here, the criteria are similarly invidious. The criteria say that you can be a convention delegate only if you associate yourself, not only that, that you falsely associate yourself. How do we know which of these things are sufficiently invidious and constitutionally dubious to give standing? I say Albany and New York. You know, you can make any number of arguments as to why that would be constitutionally invidious, or that the convention must be held in one place rather than across that, or almost any other rule. How do we know which rules in your terms fall on one side of the line and on the other? You've given us some example that the Supreme Court held fell on one side. Here, Judge Calabresi, I think the distinction is clear because Mr. Davis is standing. This Court has ruled that in the area of political advocacy, First Amendment rights are at their zenith, and in the Daugherty case, this Court has ruled that when First Amendment rights are at issue, standing and ripeness considerations are relaxed. And Mr. Davis has made a well-pleaded allegation. Again, Judge Codall ruled that Mr. Davis has to show by a preponderance of the last year in the Carter against Health Port Technologies decision, wrote, and the Court has written elsewhere, that all he needs to do, that he bears no evidentiary burden at all. All he needs to do is make well-pleaded allegations. And Mr. Davis has made well-pleaded allegations that these provisions impose association, impose speech on him and others similarly situated that he does not want to have. And with the First Amendment at stake, Your Honor, that is where the line can be drawn. Thank you. All right, Mr. Tisney. May it please the Court, Philip Tisney for the State Board of Elections. Plaintiff lacks standing because the candidate laws don't apply to him until after the 2017 general election at the very earliest, and because the candidate laws do not currently prevent him from saying anything that he wants to say. The District Court correctly dismissed the action and its judgment should be affirmed. Plaintiff alleges essentially two injuries here, two injuries that were identified by the District Court. The first is an injury that would arise if the candidate laws are meant to apply to him by requiring him to circulate nominating petitions and appearing on the ballot next to the name of the nominating body responsible for his nomination. Clearly, that injury isn't ripe until after the 2017 election because Mr. Davis may never even appear on the ballot. He may never have to circulate nominating petitions. And so whatever injury he claims will arise from those circumstances might never come to pass. To get around that clear defect, he's generated a speech argument. Now, he doesn't actually claim that the candidate laws require him to say anything or prevent him from saying anything in his convention advocacy. Of course, the candidate laws don't regulate his speech in any respect, at least in respect to his convention advocacy. Instead, he claims that voters will misunderstand the fact that he has a name next to his, the name of a nominating body next to his name on the ballot, and they will confuse that for a political association, a partisan political association. Those same voters will remember back to pre-convention days when Mr. Davis told them that he was independent and nonpartisan and that they will think less of him and it is to avoid that reputational harm that he claims he cannot call himself independent and nonpartisan now. That circumstance, that reputational harm, which he seeks to avoid, is a figment of his imagination. There is absolutely no evidence to suggest that that reputational harm will come to pass. This is a speech restriction that he has purely imposed upon himself to attempt to generate standing here. Tiffany, you heard Mr. Friedman's argument earlier regarding Judge Codall's adoption of the legal standard of preponderance of the evidence. Is that accurate? Is that what Judge Codall did in his opinion? Judge Codall looked at the allegations of the complaint. Certainly, a plaintiff does bear responsibility for proving standing and the Supreme Court has made clear that where the basis for your standing are allegations of self-imposed speech restrictions that you have to demonstrate the thing that you're responding to is actually a thing that exists in reality. Here, he has to show that the reputational harm that he is going to try to avoid by changing his speech is actually something that exists. But did the district court say that the standard was on that issue, the correct legal standard was preponderance of the evidence? It recited the preponderance standard. It applied the pleading standard. So in the breach, there's no problem. If it was incorrect on that and we agree with you, can we decide the same way while correcting the district court and the standard it applied? Certainly, of course. Regardless of what standard applies here, there is no basis for standing because any injuries that would happen when he is meant to comply with the laws... Let's assume that he runs saying that he is unaffiliated and then a convention, because he runs that way, a convention is called and then his name is attached to somebody. Could he go and immediately ask for an injunction to keep that affiliation off because it is unconstitutional? If voters decide to call a convention in 2017, plaintiff could challenge the same laws that he challenges here. Thereafter, we've cited cases and this court is certainly well aware of the speed with which the courts in this district can handle election cases. But he could even get a preliminary injunction. He can get, before the thing is decided, to get the affiliation removed if he shows that that shows the harm that he is saying that there would be. Well, he couldn't get the preliminary injunction, Your Honor, because he wouldn't be able to show that he was likely to succeed on the merits, but it would be at least available to him. Yeah, yeah, that's what I mean, available. I mean, he might lose or not, of course. Exactly. And for these reasons, his claim is best brought, if at all, after the 2017 election. Unless the panel have any further questions, we think the district court's judgment should be affirmed. Ms. Williams, go ahead. May it please the court, Melanie West for the City Board. My arguments are very much the same as the state's, and so I won't belabor the point. Um, nothing in the candidate laws prevents Mr. Davis from campaigning truthfully as an independent candidate. Indeed, on its face, the statute allows for independent candidates, and the process that he's challenging is named the procedure for independent candidates to stand for election. There's simply nothing in the laws that prevents him from doing anything that he believes is wrong. His claim of reputational harm is completely speculative and based in nothing other than his subjective belief that voters, upon seeing an independent nominating body name next to his name on the ballot, will believe that he falsely represented himself as an independent candidate. There's simply no basis for that in the record or in common sense. Your Honor, as I don't want to repeat the arguments that were made before, unless there are questions for me, I'll rest on our brief. Thank you very much. Mr. Friedman. Thank you, Judge Cabranes. Very briefly, the argument today, in part because of the questions that have been posed, focuses very much on the infirmities of the candidate laws after the vote takes place in November 2017, whether to hold a convention or not. The primary reason, the primary concrete, current injury that Mr. Davis is suffering is injury that is occurring today. And that is as concrete and current injury as can be, whether the convention is approved or not. And Mr. Tisney started by saying the candidate laws do not apply to Mr. Davis until a convention is approved. That is fundamentally not true. Mr. Davis is engaging in pro-convention advocacy now. And whether Mr. Davis himself can call himself an independent, if a convention is approved or not, is irrelevant to that issue. Mr. Davis' pro-convention advocacy is premised on the notion that voters will be able to identify and elect candidates to serve as convention delegate, as such, independent, unaffiliated candidates to serve as convention delegates as such. That is the fulcrum of his pro-convention advocacy. And the provisions of the candidate laws impede him in making that advocacy, in projecting that advocacy, because the provisions of the candidate laws say to the voters who will decide on a convention in November 2017 that every political body. And if Mr. Davis cannot challenge that now, then Mr. Davis' pro-convention advocacy now is being impeded. The state and city, in effect, are being able to rely on a law that this court may conclude is unconstitutional in order to prevent the realization of the situation in which that unconstitutionality would have a second pernicious bite if a convention is approved. It's a classic catch-22. If one accepts, as one must, because one must accept the well-pleaded allegations as true, that the inability of voters to have assurance that they will be able to elect independent candidates, that that contributed to the rejection of a convention the last time it occurred, then one must recognize that in order for a convention vote to succeed, voters need the assurance that if they vote in favor of a convention, they will be able to elect truly unaffiliated, independent candidates as such. And the candidate laws on the books now prevent voters from having that assurance. So we're in a vicious cycle where voters are being whether they want to approve a constitutional convention or not because they don't have the assurance that the convention vote, the convention delegate vote, will be run in an appropriate way. And if this court continues to prevent Mr. Davis from prosecuting his claims until the convention vote takes place, then we may be in a situation where these laws can never be reviewed. Thanks very much, Mr. Freeman. We'll adjourn the decision. We're adjourned.